766 December 17, 2025 No. 1094

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN DINIUS,
*Defendant-Appellant*.

St. Helens Municipal Court
21CR175; A183313

Amy B. Lindgren, Judge.

Submitted August 22, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and James Brewer, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII) and raises one assignment of error, arguing that the trial court erred by denying in part his motion to suppress. Specifically, defendant argues that urine test evidence should have been suppressed because it was discovered through an unlawful vehicle search and the state did not argue that the urine test evidence was attenuated from that unlawful search or admissible under a separate ground. Defendant also argues that he was questioned in compelling circumstances prior to receiving *Miranda* warnings.[1] The state responds that the trial court's denial in part of the motion to suppress was correct. We agree with the state and determine that defendant did not properly preserve his argument or otherwise put the trial court on notice that he was moving to suppress the urine test and because of this, we cannot discern whether the trial court made a ruling on that issue. Thus, we affirm.

This case arises from a DUII investigation. An officer responded to a call regarding a driver who was swerving, failing to maintain a lane, and stopping at a green light. When the officer approached defendant, defendant was parked in a restaurant parking lot, and he was standing at the trunk of his vehicle. The officer noticed that defendant was disheveled, and his eyes were bloodshot, droopy, and watery. Based on the caller's report and his own observations of defendant, the officer believed he could begin a DUII investigation. After the officer questioned defendant about his evening, with two other officers present, defendant consented to, and the officer conducted three Field Sobriety

---

[1] Defendant also argues that *State v. Nelson*, 285 Or App 345, 397 P3d 536 (2017) (holding that "routine traffic stops" are not "sufficiently compelling to require *Miranda* warnings"), and the Oregon Supreme Court cases on which it was based (*State v. Prickett*, 324 Or 489, 930 P2d 221 (1997); *State v. Vu*, 307 Or 419, 770 P2d 577 (1989); and *State v. Magee*, 304 Or 261, 744 P2d 250 (1987)) were wrongly decided.

As to the cases from the Oregon Supreme Court that defendant points to, as an "intermediate appellate court," we are "bound by the precedent of the Supreme Court." *State v. Portulano*, 320 Or App 335, 355, 514 P3d 93 (2022). As for *Nelson*, defendant has not persuaded us that *Nelson* was "plainly wrong." *State v. Woods*, 317 Or App 506, 513, 505 P3d 432, *rev den*, 370 Or 198 (2022) (explaining that "[t]he plainly wrong standard is a rigorous one, grounded in presumptive fidelity to *stare decisis*" (internal quotation marks omitted; emphasis in original)).

Tests (FSTs). Defendant's performance on each test corroborated the officer's belief that defendant was impaired.

At that point, the officer believed that he had probable cause that defendant had committed DUII, and the officer arrested defendant. The officer gave *Miranda* warnings and performed a search incident to arrest of defendant's vehicle, searching specifically "[t]he driver seat" and "basically his surrounding area." The officer found a cup that appeared to have paint in it and two bottles of pills, but he did not recall "exactly where [the pill bottles] were at." The officer read defendant an implied consent form and requested a breath test, which showed a blood alcohol content of 0.00 percent. Subsequently, defendant took a urine test, which showed the presence of "methamphetamine, amphetamine, cocaine, clonazepam, quetiapine, and their metabolites."[2]

Before trial, defendant moved to suppress "any and all evidence gleaned from the unlawful stop, search, seizure, arrest, and interrogation" during the encounter as "fruit of the poisonous tree *** [including] any and all derivative evidence." Defendant did not explicitly argue about the urine test in his motion to suppress. In its written response to the motion to suppress, the state argued that the search of defendant's vehicle was a lawful search incident to arrest.

After a hearing on the motion to suppress, the court granted it in part and denied it in part. The trial court first determined that the officer had reasonable suspicion for the crime of DUII because he had received an informed caller's detailed complaint.[3] The court concluded that the officer "subjectively believed he had probable cause once the defendant started speaking and his subjective belief was objectively reasonable based on the totality of the circumstances."

During the suppression hearing, the court ruled all evidence concerning the pill bottles would be suppressed,

---

[2] Although there were conflicting positions about whether defendant consented to a urine test or only consented to a blood test (which was not performed), the trial court found that defendant had consented to provide a urine sample.

[3] The informed caller gave her full name, and accurately gave defendant's license plate number and reported defendant to be standing at the trunk of his vehicle.

because the state failed to satisfy the search-incident-to-arrest exception to the warrant requirement and because "without testimony to support the exact location of the pill bottle, the court cannot make the inference on its own." While describing that the pill bottles would be suppressed, the court made an ambiguous statement about the urine test: "I mean, his urine test is the urine test *** which showed clonazepam." There was no explicit mention of the urine test in the court's written order. Defendant proceeded to trial and the breath test and urine test evidence was admitted during trial. Defendant was convicted by a jury.

Defendant argues that when the state obtains evidence "following a violation of a defendant's Article I, section 9 rights, it is presumed that the evidence was tainted by the violation and must be suppressed." *State v. Jones (A154424)*, 275 Or App 771, 778, 365 P3d 679 (2015).

The state argues that defendant did not properly preserve his argument related to suppression of the urine test and that the practical policies underlying the preservation rule, including efficiency, fairness, and record development, support its position. *State v. Anderson-Brown*, 277 Or App 214, 220, 369 P3d 1248, *rev den*, 360 Or 465 (2016); *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008).[4] The state argues that a criminal defendant "bears the responsibility of framing the issues contemplated by the motion." *Anderson-Brown*, 277 Or App at 220 (internal quotation marks and citation omitted). It argues that defendant's failure to identify the specific pieces of evidence targeted by defendant's suppression motion undermined the efficiency of judicial administration, the preservation policy of fairness, and the full development of the record. For those reasons, we agree defendant failed to preserve his argument. Because defendant made no argument specifically about the urine test, did not clarify the court's statement about the urine test, and did not object on the basis of the illegal search and

---

[4] The state supports its argument by citing *State v. Thompson*, 370 Or 273, 292-93, 518 P3d 923 (2022), in which the Supreme Court assumed without deciding that the state was correct that a generic request for suppression is insufficient. However, the Supreme Court explicitly stated it was "assuming without deciding" that the generic motion was insufficient to suppress the evidence, and therefore *Thompson* expresses no position on the issue at hand.

lack of attenuation when the urine test results were offered and admitted at trial, we can only assume that the argument at the suppression hearing was relevant to the pill bottles, and not the urine test.

Defendant argues that, after the trial court determined that the vehicle search was unlawful, the burden shifted to the state to argue that any subsequently obtained evidence that the state wished to introduce was attenuated from the violation and that the state did not carry that burden.

However, this burden shifting point must also comport with the preservation doctrine, which, in part, asks "[w]ould the trial court be taken aback to find itself reversed *on this issue, for this reason*?" *State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) (emphasis in original). Here, because neither the defendant, the state, nor the trial court made an explicit argument or finding related to the urine test, it is very likely the trial court would be surprised to be reversed on this point.[5] Because defendant's argument about the urine test was not preserved, we do not address it.

Regarding defendant's *Miranda* argument, he argues that the trial court erred by determining he was not questioned in compelling circumstances before being read his *Miranda* rights. We review the trial court's denial of a motion to suppress for legal error. *State v. Beeson*, 307 Or App 808, 810, 479 P3d 576 (2020), *adh'd to as modified on recons*, 309 Or App 787, 482 P3d 821 (2021). We are bound by the trial court's explicit and implicit findings of fact, so long as there is evidence in the record to support them. *Id.*

The trial court concluded that "nothing in the interaction between the defendant and the officers investigating defendant for DUII prior to the defendant being placed in handcuffs created a compelling circumstance that required [the officer] to inform defendant of his *Miranda* rights." The court's findings are supported by evidence in the record,

---

[5] If the defendant had preserved this argument, the state would have had the opportunity to develop the record more in this case regarding attenuation or implied consent, similar to what happened in *State v. Hamilton*, 330 Or App 258, 272, 543 P3d 704 (2024), in which "the state met its burden of proof that [the] defendant's consent to the urine analysis was sufficiently attenuated from any misconduct."

and the court did not err in determining that defendant was not subjected to compelling circumstances prior to being *Mirandized*.

Affirmed.